Case number 19-5315, N. Ray, Application to Obtain Discovery, Argument not to exceed 15 minutes per side. Mr. Lifshitz, you may proceed for the appellant. Good morning, and may it please the court. David Lifshitz from Freshfields for the appellant. I'd like to reserve five minutes for rebuttal. In this action, the appellant thought discovery pursuant to 28 U.S.C. 1782 for use in an arbitral proceeding pending in Dubai. The district court denied the application, finding that the Dubai tribunal was not a foreign or international tribunal within the meaning of that statute. We respectfully submit that in denying the application, the district court committed three errors of law. First, in finding that section 1782 is ambiguous as to whether private arbitral tribunals fall within the plain meaning of the term foreign or international tribunal. Second, in finding that the Dubai tribunal is functionally not a tribunal. And third, in finding that the Dubai tribunal, which is constituted under the auspices of a state-sponsored body, is not a foreign or international tribunal within the meaning of section 1782. The correction of any of these three errors would result in this court holding that the Dubai tribunal is a foreign or international tribunal within the meaning of section 1782 and require the reversal of the district court's order below. It would also result in this court joining the approximately 70 percent of courts across six judicial circuits that have reached the same conclusion. If this court finds for the appellant on this gating issue, we would ask that it also consider the discretionary factors which were briefed and argued to the district court but which the district court did not address. You say 70 percent of the court. What percent are district court opinions and what percent are circuit court opinions? Your Honor, I believe the vast majority of those are district court opinions. The only appellate court to squarely consider the question presented here was the 11th Circuit. It found in the way that we're asking you to rule, that decision was subsequently withdrawn two years later on the basis that there was an easier way for the circuit court to rule. It was withdrawn to Esponte. There's also a 5th Circuit appellate decision which essentially found that the prior panel rule required the 5th Circuit to rule against discovery in aid of international arbitration. Isn't there also a 2nd Circuit opinion before Intel? Yes, there's a 2nd and a 5th Circuit opinion before Intel. We would argue that Intel undermines the reasoning of those decisions in a couple of different ways. You still include that 2nd Circuit decision, don't you, in your percentages? In our recon percentages, we wanted to count them for a decade, so we started in 2009. Why does Intel undermine the 2nd Circuit and the 5th Circuit opinions? In three ways, Your Honor. First is the core reasoning of Intel was that in amending Section 1782, the Congress did not intend to apply to arbitral bodies. In adjudicating Intel, which dealt with an antitrust question in Europe, the Supreme Court specifically lifted language out of the legislative history, and then language out of an article published by the author of the statute that identified arbitral bodies as something that fall within the meaning of foreign or international tribunal within the statute. It also undermines it because Intel as a whole, when you read it, stands for the proposition that we should not be reading in categorical limitations into the statute that the statute's plain text does not provide. And in one way in which it's particularly relevant here is that Intel, and I apologize, that NBC and Biderman before it, one of the reasons they ruled against international arbitration being a foreign or international tribunal was the supposed disparity with the discovery one is able to get before the FAA. And on that point, the court specifically rejected that sort of reasoning, Your Honors. The Supreme Court? Yes, the Supreme Court rejected that reasoning saying, we also reject Intel's suggestion that 1782 applications must show that the United States law would allow discovery in a domestic litigation analogous to the foreign proceeding. Section 1782 is a provision for assistance to tribunals abroad. It does not direct United States courts to engage in a comparative analysis. It is precisely that comparative analysis that both NBC and Biderman apply to reach their decision. Let me ask you about the Federal Arbitration Act and how it would apply to these arbitrations. Could you get discovery under the FAA for these arbitrations under the FAA? No, you can't. FAA is only applicable to arbitrations that are United States arbitrations that are seated in the United States. So for our arbitration, which is seated in Dubai, the FAA is inapplicable. The statute that would apply is Section 1782. So why would it that Congress would want to have more discovery for foreign arbitrations than for domestic arbitrations? Well, you might ask that same question is why would Congress want more discovery for international tribunals and international courts than is permitted for domestic courts? And the Seventh Circuit squarely said that that reasoning is flawed in light of the clear language of the statute. But the second reason, Your Honor, is that the second reason is that in reaching the decision, the United States Congress was intentionally trying to make U.S. courts open to foreign litigants to promote adjudication through neutral adjudicative bodies. How does reading tribunal to include arbitrations further that goal of making American courts open to foreign litigants? The word litigant then as now does not only refer to litigants before foreign courts, Your Honor. The word litigant would apply to a proceeding before the competition authority in the European community or in fact the parties here. And when you look at the legislative history, when the Kennedy administration sent this case to Congress, it specifically said that it was sending it to promote, to give assistance to private litigants, Your Honor. And when you look at the statute and the predecessor statute which everybody concedes was designed for arbitration, Section 270 to 270C of Title 22, that section was limited by its very terms to arbitration proceedings that were created under the auspices of a treaty to which the United States was a party and in which the United States or its national had a claim. Congress specifically identified those restrictions as quote-unquote undesirable. And when you look at the modern language of Section 1782, there is no such restriction there. It simply says that the discovery is available in aid of a proceeding pending before a foreign or international tribunal. I would also note that in this particular case, there is a way for you to rule that would not require reaching a different conclusion than did the court in NBC or Biderman. And that is because in this context, while the dispute is private, the dispute adjudicative body, the DIFC-LCIA, gets its authority not from the agreement of the parties but from an act of the ruler of Dubai which created the Dubai Arbitration Institute which entered and authorized it to enter into a joint venture that is the DIFC-LCIA. In that regard, we are far closer to what is available under a treaty for bilateral investment treaty arbitration than we are to a purely private arbitration under the rules of the ICC or for example, the AAA. And one… Yeah, under the DIFC rules for appointment of arbitrators. Yeah. So that each party appoints one and if they don't agree, then there is one appointed by the court? That's not correct, Your Honor. The way that the rules work, it's the LCIA court that appoints the arbitrators. The court appoints all three arbitrators? Correct. The parties have no say whatsoever. Who pays the arbitrators? Your Honor, I believe that as is typical under arbitration, there is a statement of cost that is paid by the parties split evenly. One could think of it as administrative costs in a court. So the court doesn't pay the appointed arbitrator? No, as far as I know, that's correct, Your Honor. The court does not pay. But the parties do not appoint arbitrators. And again, the authority to adjudicate the case comes from the statute, the Dubai arbitration, the DIFC law, which is at pages 1181 to 1196. What about in the other arbitration? The Saudi arbitration has been dismissed. We have appealed that dismissal. How are the arbitrators appointed in that? That one has ad hoc with each. Well, actually, you know what, Your Honor? I don't know the answer to that question. I will check and respond in rebuttal. Finally, Your Honor, turning to the functional analysis test, which the court ruled against us, there is a number of reasons why that ruling is incorrect. First of all, Intel does not identify whether the review should be substantive or procedural. And we know that the review available to arbitral awards in the United States is still judicial review, as the 11th Circuit said in its analysis. Moreover, there is no dispute that the arbitral bodies created by statute fall within the meaning of Section 1782. But those very arbitral bodies, by law, are subject to no judicial review whatsoever. And that's 22 U.S.C. 1650A. The decision of those arbitral bodies is supposed to be given the effect of a final judgment of a state supreme court. Just one question. So you've appealed the Saudi panel dismissal. Yes. Is there any indication when that appeal will be decided? Is there an argument or evidentiary hearing schedule or anything of that nature? Argument is scheduled for September 3rd, Your Honor. I don't know when they will reach the decision thereafter. I'm sorry. No, go ahead. What's the date for the other proceeding when that's supposed to go to hearing, the IFC? November. I believe it's November 9th. The parties have agreed to a slight amendment of the briefing schedule such that our brief will be due in October. But the trial, if you will, Your Honor, is scheduled for November, which is why we have asked that this appeal be expedited. It is also why we ask that if you get to it, you decide the discretionary factors. Okay, thank you. You'll have your full rebuttal time. Good morning. May it please the court. My name is Daniel French, and I, along with my colleague, Colleen Hitch Wilson, represent FedEx Corporation in this matter. Several things I just wanted to pick up based on the questions the court's asked so far. First of all, with regards to the DIFC, it is not a state-sponsored institution. That is just simply not true. It was established as a free trade zone, and it was specifically given jurisdiction within the UAE by the UAE. But it is no different than a state saying, we're going to give land to this organization, and they can operate freely within the state without state control, without state interference. So the UAE has no role in the DIFC at all. It merely gave them the land and gave them the institution to operate within. And if you go just to their website, it explains this. It explains that it was necessary because people didn't want to do business in the UAE because of the worry of interference by the UAE government. I also wanted to pick up on the 70 percent argument that my opposing counsel made. That is just simply not true either. We tried to run the numbers based on the cases that ALJ cites to. I think they cite to 17 cases that they claim supports their argument that Biedermann and NBC, which are the Fifth Circuit and the Second Circuit cases that support our position, we tried to run those numbers. We couldn't even come up with that percentage. And we don't know what the 30 percent they're talking about that ruled the other way because they don't cite to that in their brief. But when you look at those cases... What are your percentages then? Our percentages are the Second Circuit and NBC. What are the percentages? What percentage of the district courts have ruled in your favor? Okay, I guess we know the circuit courts. It would be 50 percent. It would be 50-50 at this point, Your Honor. Okay, all right. It would be 50-50. The most recent decisions in the Second Circuit in the district courts, and there's one that we recently just cited to In re Petrobis, which just came out on July 29th. And Judge Rakoff in that case basically affirmed that NBC is good law and that Intel did nothing to overturn it, that Intel did not... Don't you concede there's language in Intel that goes contrary to your position, that has broad language in it? I would not concede that it goes contrary to our position with regards to the categorical exclusion argument or with regards to the functional analysis. And this is the reason why. As Judge Rakoff noted, arbitral tribunal has been used in many contexts. That's a common phrase. It doesn't necessarily mean private arbitration. In fact, he noted in his opinion that arbitral tribunals were, quote, arbitral bodies created by governments or intergovernmental agreements. This was something that the Second Circuit seized on in NBC. The Second Circuit noted that the phrase arbitral tribunal, this is even before Intel, but noted that that phrase uniformly in the United States Code refers to intergovernmental bodies. It refers to international tribunals created by governments. There is some common law authority, though, some case law where courts have used the word tribunal to refer to an arbitration. I think that's correct. Absolutely. How do you explain that in light of your position? Should we not give weight to that? Well, I think that supports our position, Your Honor. We are arguing that the term tribunal in 1782 is ambiguous. ALJ is arguing it's not. And I think ALJ's argument demonstrates that it's ambiguous. OK, what does tribunal mean? Does that mean arbitral tribunal? Does it just mean foreign or state courts? If it's arbitral tribunal, does that mean state-sponsored arbitrations or arbitral bodies? Or does it mean all private arbitrations worldwide? Because that's really where this is heading. I mean, ALJ's argument is that any adjudicatory body worldwide can come to the United States under 1782 and get discovery. As long as you're like a private arbitration and you're a first instance fact finder and you can present evidence and there's any type of judicial review, does it matter the scope? Do you think any kind of arbitration fits within the meaning of tribunal? Yes, I do, Your Honor. We believe that treaty arbitrations, ones that are pursuant to bilateral investment treaties, ones that involve state governments or bodies created by state governments. What sources do you rely upon to say that that's the meaning of tribunal? The same sources that NBC, that the Second Circuit and the Fifth Circuit relied on. Simply going to the legislative history and looking at what Congress was hoping to do when it expanded 1782. So do we just ignore the way courts have interpreted the word tribunal in other contexts? I think Your Honors can ignore the way courts have interpreted tribunal in the way ALJ asked this court to interpret it. All those courts are post-intel. The only courts that spoke to this pre-intel were the Second Circuit and the Fifth Circuit. After intel, simply because... I'm just talking about the word tribunal in general, going back to Blackstone. I think Blackstone used tribunal to refer to an arbitration. Isn't there just evidence out there in the common law that tribunal has been used to refer to arbitrations? No, Your Honor. I do not think that when Blackstone, the Supreme Court and intel, that it is clear that they meant the modern construct of private arbitration, meaning private parties, private agreement, and private body that's hearing the resolution. I don't think ALJ really offers support for that. They just cite to Blackstone and then they use the phrase arbitral tribunal. Well, we admit that the Supreme Court and intel also cited to a law review article that said arbitral tribunal. Our argument is that does not mean private arbitrations and what authority do you have for that? Our authority in that would go back to the legislative history and even the Supreme Court's... Is the legislative history clear that it does not apply to private arbitrations? Your Honor, they don't address private arbitration at all in the legislative history. Okay, so it doesn't support you then? Well, I believe it supports us because Congress was clearly aware of private arbitrations when it expanded the act in 1964. The Federal Arbitration Act had been passed in 1925. And so through this expansion of 1782, they were talking about the twin aims of the statute. What are the twin aims? Efficient assistance to foreign litigants in front of courts and also encouraging other state governments and courts to provide similar assistance to US courts. Those are the twin aims. Neither of those aims are satisfied by private arbitrations. And it's striking to think that Congress who is completely aware of arbitrations at that moment in time, expanding this, would not even discuss arbitrations as being part of that expansion while they were specifically discussing intergovernmental agencies, quasi-judicial government bodies, investigative courts, and whatnot. Can the Federal Arbitration Act apply to any type of international private arbitration? Can you think of any instance where that would occur? Does Your Honor mean if parties agreed internationally to the Federal Arbitration Act here to do the arbitration domestically? No. If you had an international arbitration going on and a party in that arbitration wanted to get discovery in this country, could they proceed under the Federal Arbitration Act? Not that I know of, Your Honor. What would you have to do under the Federal Arbitration Act to get discovery in this country? Under the Federal Arbitration Act, you would have to go to the panel itself and request permission to take evidence from a third party. That has not been done in this case. I'll note that. Suppose they did that in your case. They went to the panel. And the panel said it was receptive to this type of discovery. And suppose then they submitted a request to a federal district court under the Federal Arbitration Act. Could they get discovery? No, Your Honor. I don't think that they could. But I'm happy. We have not briefed that specific issue, but I'm happy to submit further briefing on it with Your Honor. But I'm not aware of any case in which that has happened. The mechanisms to get discovery that foreign litigants have used is 1782. And it, in fact, is expansive discovery under the federal rules of civil procedure, which, as Your Honor knows, you cannot get in arbitration. So I would say, though, that even if that were the case, if people could come under the Federal Arbitration Act, our argument would still be the same. It would be that private arbitrations are categorically excluded from the scope of 1782. Well, I think it helps your argument, actually, if they could get it under the Federal Arbitration Act. Or if there's some availability, then there would be potentially a conflict between the Federal Arbitration Act and this statute. 1782, I think. Your Honor's point, too, the limitations that the FAA would impose versus 1782. Yes, you would be correct. We're not aware of that, but we will definitely look into that past this point. But getting back to, basically, Intel, ALJ's entire argument for this court to ignore the Second Circuit and NBC and to ignore the Fifth Circuit and Biedermann and to ignore the Fifth Circuit's reaffirmation of Biedermann in El Paso post-Intel is that, somehow, Intel sub silentio or did not even discuss those two cases when it used the language arbitral tribunal. It didn't note that the Second or the Fifth Circuit had already found the opposite of this issue. And I think, Your Honors, if you look at the substance of Intel, Intel was concerned with the European Commission. They were concerned with a state-sponsored body. This was not a private arbitration. And, in fact, under the European Commission, whatever their rules were, you could appeal to the Court of First Instance in Europe. You could then appeal to the Court of Justice in Europe. And those courts had the ability to amend whatever the Commission found. They could substantially review what the Commission found. So, I submit to this court that Intel did not examine the issue that is before this court at all. Did the briefs filed in the Supreme Court refer to the Second Circuit case and the Fifth Circuit case? Your Honor, I'm not aware of that, but I'm happy to... You haven't reviewed them? I mean, I'd be shocked if they didn't. Your Honor, I'm not aware of that, but I'll have to go back and look. Off the top of my head, I don't remember if they specifically referred to those cases. But I would submit that even if they did, they weren't on point to this issue because that, the European Commission didn't start because people privately contracted, agreed to a set of rules, and then went in front of a private body. It started because one of the parties filed an antitrust complaint. And once the complaint was filed, the court of first instance, who could not hear evidence in the case, tasked the European Commission on its behalf to gather evidence in the case. And so, this was a completely different type of body that was hearing this. And this is the reason the Fifth Circuit in El Paso, after post-Intel, said, Beiderman is still good law. There's nothing in Intel that's overturned it. And so, I would submit that the categorical exclusion argument is an argument this court could adopt and apply in order to affirm the district court's decision. Now, ultimately, the district court denied ALJ's application under the functional analysis. And it did so on the basis that in the DIFC, any arbitral panels award is not subject to substantive judicial review. ALJ's argument is, well, when we use judicial review in the functional analysis, that's any type of review. So, if I can move to set aside an award, for example, under the Federal Arbitration Act, that's the kind of judicial review that matters. And therefore, anybody subject to that kind of review should automatically fall under the functional analysis as a tribunal. I submit that that's not what the court meant in INTEL. In INTEL, again, the court is looking at an appeal process or review process that is substantive at its core. The court of first instance, the court of justice, can review whatever the commission found substantively. We also look at what the court said in 2009 in the Hall Street v. Mattel case. In that case, the court was dealing with the FAA. And it distinguished between two types of review. It talked about limited review, which is normally applicable to arbitrations, meaning setting aside, procedural, whatnot. And then it talked about full-bore evidentiary and legal review that would undermine the benefits of arbitration. And so I submit that what the court meant in INTEL when it was talking about the functional analysis and it was talking about judicial review, it meant that full-bore evidentiary and legal review. It did not mean the limited review that you can obtain in the DIFC. In the DIFC, once the arbitration panel has made its award, any one of the parties can appeal to the DIFC court. And the DIFC court is certainly a state-sponsored, created institution. And it reviews anything that comes out of the panel. But the reason that its review is limited is because they want to preserve the cost-effectiveness and the efficiency of the arbitration in the DIFC. So their review are things like, well, I didn't get notice of who my panel was going to be in time. Or, the panel procedurally failed to listen to my arguments. Or, there's nothing substantive about it. Now, ALJ's position is, well, they can review under public policy, so that's substantive. Well, no, it's not. It's still procedural. Because, in public policy, they're looking at, was the agreement unconscionable? Because it violates the positions of the DIFC or the rules of the DIFC or whatnot. They cannot amend the award. They cannot decrease the award. They cannot increase the award. They can do nothing of the sort. They will send it back to the panel after they've made a decision, and then the panel substantively deals with the issue again. Thank you, Mr. French. Your time has expired. Thank you, Your Honors. Thank you, Your Honors. Really quickly, the count of decisions that there's, we are aware since 2009 of 31 decisions of which 20 granted discovery in aid of arbitration. Pivoting back to where Mr. French just finished, the functional analysis test and the review available under the rules of the DIFC, LCIA. That review for public policy, unlike public policy in the United States or most other jurisdictions of which we're aware, is actually prescribed by statute which provides that it should be, you can review an arbitral award for anything that relates to freedom of trade and other rules and foundations upon which society is based such as contract law. The claims in this arbitration are antitrust, monopolization claims, and breach of contract claims, both of which will absolutely be subject to review by the DIFC court which, well, which is empowered to set the award aside if it finds that legal error was made. Focusing on the state sponsor bid in Dubai for just a second, Mr. French is right and we agree with him. The DIFC court is a state sponsored body. The very next sub-article that, in the statute that creates the DIFC court creates the Dubai Arbitration Institute. It is given a board of directors that is appointed by the chief judge of the DIFC court. He, that, the chief judge is in turn appointed by the ruler. It is that arbitration institute that enters into a joint venture with an arbitral center to create the DIFC LCIA arbitration center. It has the authority to enter into that joint venture and if you look at the website of the DIFC LCIA center as Mr. French asked you to, the very first sentence references the joint  center. You're, Judge Griffin, you're absolutely right. There is nothing in the legislative history that expressly prohibits applying section 1782 to private arbitral tribunals. In fact, nothing in the plain text of the statute at all compels that conclusion. If you do look, if we were to look at the predecessor statute, the words used in that statute specifically permitted assistance only in aid of arbitral bodies created under the treaty. That is what Mr. French is talking about. Those words were taken out of the statute when section 1782 was passed and if plain meaning of the statute dictates that it be given its reading. Focusing on the question of ambiguity, Your Honor, we have not seen it in their papers. We did not actually see it in NBC either. No court has provided a definition nor did Mr. French of tribunal that would exclude arbitral bodies. In fact, as Judge Bush noted, arbitral bodies have for centuries been used to denote arbitral bodies. We know the Detroit medical case from this circuit which says that when Congress legislates against the backdrop of a term of art that has had a particular meaning for centuries, we are to assume that that is what Congress meant when it legislated. The ambiguity to which FedEx argues exists, if you look at the case law that they cite, it demonstrates the lack  This is also the only case on which NBC relies. In that case, the Robinson case, the Supreme Court Justice Thomas in a case like this, there is no statutory provision in 1782 or anywhere else in title 28 or the U.S. code that has been cited that has a different meaning. Finally, to end on the policy point, it is true that Congress legislates and is concerned with policy. We submit that Mr. French's concern is overstated for two fundamental reasons. One is that parties if they want to exclude 1782 in international arbitration, they can do so as a matter of contract. It is as easy as putting a single sentence in the arbitration clause. Two, we have seen discovery in native arbitration going on for ten years. Nothing has been suggested, no amicus briefs have come in that has undermined international arbitration as an efficient and effective dispute settlement process. My time is up. Thank you. Okay. Thank you, counsel, both of you, all of you, for your briefing and arguments this morning. The case will be submitted and you may call the next case.